STOULIG, Judge.
Plaintiff, Richard E. Deichmann, filed suit for payment of his proportionate interest of $75,500 in the Alto Employees’ Trust that he alleged became due when he terminated his employment with Alto Trailer Sales, Inc. The answer filed for defendants, A. A. Harmon, Sr., trustee, and the trust itself, claimed the trustees elected to defer payment to plaintiff to his retirement age, which they were authorized to do under the trust agreement, as amended. From a judgment dismissing his suit, plaintiff has appealed.
In this appeal we are concerned only with the distribution provisions of the trust instrument and amendments thereto. By way of background we note the trust is a qualified, noncontributory profit sharing fund, wholly financed by annual contributions of up to 15 percent of the employer’s net profits. Its approval by Internal Revenue Service as a qualified plan permits beneficiaries to defer tax payment on their interest until they receive distribution.[1] This affords each participant an opportunity to control to some extent the rate of taxation on his interest and generally, if the funds are paid out after the beneficiary becomes 65, his income at that time is considerably less than in his earning years, thus his tax rate is lower.
Under the original trust agreement if an employee leaves the company before retirement, the trustees were required to remit his interest in the fund within 60 days of the end of the fiscal year within which the employee severed his connection with the company.[2] However, in a general amendatory reservation clause, the settlor reserved broad rights to change any provision of the instrument other than those relating to the financial interest of the beneficiary.[3]
In 1965, the agreement was amended and with respect to distribution to terminated employees, it deleted the mandatory payment provision and substituted in its place several modes of payment, including, but not limited to, lump sum payment, installment distribution or deferment until retire *584 ment age. The option was with the trustees, not the beneficiary.[4]
Plaintiff, a participant in the fund since its inception, left the company in December 1971 after 14 years of service. Some two and one-half years later, in a letter dated July 9, 1974, addressed to A. A. Harmon, Sr., president of Alto Trailer Sales, Inc., and also a trustee, plaintiff requested payment of his proportionate interest in the trust. Deichmann testified he made several unsuccessful verbal demands for payment and was finally instructed by Mr. Harmon, Sr., to write a letter setting forth his reasons for applying for his funds “at this time.”[5] The trustees deny that oral demands for payment were made; however we need not resolve this factual dispute to reach a result.
The record reflects that at this time the Alto trustees had voluntarily distributed to IS terminated employees their interests in the fund even though they left the company after the 1965 amendment went into effect. Defendants explain this was done because the interests were not large enough [6] to contribute significantly to each employee’s retirement fund. Therefore, since it would not constitute a meaningful supplement to retirement viewed from the beneficiaries’ interests, there was no need to retain their money.
There was one instance after 1965 where the trustees paid out $32,870.07 interest in the fund to a terminated employee, but this was only after judgment was rendered against one of the trustees ordering the distribution. That case was Martinez v. Alto Employees’ Trust, 273 So.2d 735 (La.App. 4th Cir. 1972), in which the employee essentially raised the same issues that we are now asked to decide. The court in Martinez found it necessary only to pass upon the issue of whether or not the trustees abused their discretion in failing to pay the participant’s share in a slump sum upon his demand even though he had not reached the age of retirement.
In Martinez it was also pointed out there was a close connection between Alto Trail *585 er Sales, Inc., and Alto Employees’ Trust; that A. A. Harmon, Sr., and his two sons were officers of the corporation and sole trustees; that all three participate in the trust as beneficiaries; and that the trust account is administered and audited by a Harmon-owned firm. Mr. Harmon, Sr., testified in that case that a persuasive factor in withholding Martinez’s funds was to prevent him from using them as capital to engage in competition with Alto Trailer Sales, Inc. In support of its conclusion that the trustees had abused their discretion and breached their fiduciary obligation owed to the beneficiary, this court stated in Martinez at pages 737 and 738:
“A trustee owes a great fiduciary duty to the beneficiary of the trust. LSA-R. S. 9:2082 provides: ‘A trustee shall administer the trust solely in the interest of the beneficiary.’ (Emphasis ours.) In the exercise of his discretionary powers a trustee must act not only reasonably, but with the highest good faith toward, and loyalty to, the beneficiary and in the latter’s best interest.

“It is obvious to us that the largeness of appellant’s interest coupled with the fact that Mr. Harmon felt appellant would be going into competition with his company, Alto Trailer Sales, particularly the latter, spurred the trustees to refuse immediate payment because such payment would be detrimental to Alto Trailer Sales. Insofar as is shown by the record this appears to be the only reason for the refusal. The consideration for non-payment was therefore not what was in the best interest of the beneficiary, but rather what was best for Alto Trailer Sales.”
In the case before us, we weigh the decision of the trustees to defer payment until plaintiff’s normal retirement age in the light of whose interest this best serves. Stated another way, we evaluate the trustees’ testimony to determine whether they were acting solely for plaintiff’s best interest. Uniformly, they all recited the purpose of the plan was to furnish a source of revenue to supplement social security payments the participants would receive after they reach age 65 [7] and they said this was the basis for their decision in plaintiff’s case. It was established plaintiff has a high earning capacity and will be eligible for a military service pension and owns revenue producing rental property. At the time this decision was made it could not reasonably be projected that plaintiff’s source of funds on retirement would be limited to social security benefits. This consideration in itself would be an insufficient basis for substituting our judgment for that of the trustees if their own literature on the trust did not indicate a social security supplement was only one of the considerations in forming the trust.
In reviewing the July 31, 1959 explanatory memorandum distributed by Alto Employees’ Trust to Alto Trailer Sales, Inc., employees, it is obvious that the “primary purpose” of the plan was to permit employees to share in the net profits of their employer and enjoy the tax advantages offered to participants in a qualified plan. We quote:
“The Alto Trailer Sales, Inc., has established a profit-sharing plan to reward loyal and faithful service, and to furnish each of you with an opportunity to provide a degree of security for your old age, or, in the event of death, to better provide for your families. Naturally, in either event, this fund will be a supplement to old age payments or survivors’ benefits which present social security laws now provide.
******
“The primary purpose of the Alto Employees’ Trust is to enable all of the em *586 ployees of Alto Trailer Sales, Inc., to share in the company’s profits. Under the provisions of the plan approved by the Internal Revenue Service, the company may pay over to the trust an annual amount not to exceed 15% of the participating employees’ compensation.” (Emphasis added.)
While it is true the idea of the beneficiary’s interest as a supplement to social security was considered by the settlor, had it been the only purpose for establishing the trust, there would be no reason to provide for lump sum or alternate settlements on termination of employment. Nor would it have been necessary for the 1965 amendment[8] to clothe the trustees with discretion to defer the settlement until participant’s normal retirement date. The effect of this amendment then was to vest in the trustees the obligation to weigh each individual case to determine which mode or date of payment was best for the terminated beneficiary. We think this would entail considering his earning power, his present net worth and his ability to provide for his own retirement. It is conceivable that some individuals might invest their capital more beneficially to their own advantage than might the trustees. We can envision situations where an immediate distribution would be detrimental to the individual, while in other cases lump sum payment would be to his advantage. In this case the record is not clear as to whether the trustees even discussed plaintiff’s request for payment much less attempted to weigh the individual factors that should have been considered in their determination of the beneficiary’s best interest.
The testimonial evidence does not support a finding that the trustees accorded the plaintiff’s request for payment the consideration to which it was entitled. A. A. Harmon, Sr., testified that only an informal discussion was had of the contents of plaintiff’s letter request for payment. He acknowledged his awareness of this participant’s high earning capacity and ownership of rental property. He also stated that he had no objection to plaintiff’s entering the employ of a competitor.
According to the testimony of A. A. Harmon, Jr., a trustee, he acknowledged a consideration of the plaintiff’s letter request for payment and stated that he did not take into consideration the fact of the children’s college education in evaluating the request. He candidly admitted he did not know if the trustees had the discretion to grant such a payment. He acknowledged knowing of the plaintiff’s earning capacity, pension rights and rental property.
Lastly, L. J. Harmon (the third trustee empowered to administer the trust) also stated that plaintiff’s letter request for payment was considered and rejected. In reply to what factors he considered in arriving at his decision to reject, he stated the fund was meant to be a retirement fund, a supplement to social security. When asked if in his opinion the reasons advanced by the plaintiff for payment were valid, he replied: “Well, really — it is not up to me to determine — .”
In summary the gist of the testimony of the three trustees clearly reflects that a serious in depth consideration of all of the *587 factors involved in plaintiff’s request for payment was not had before its rejection. It indicates that certain of the trustees were not conversant with the actual terms and conditions of the trust as they relate to the distribution of a terminated employee’s proportionate share.
Under these circumstances it is obvious that the trustees were unable to fulfill their obligation as fiduciaries of the plaintiff and to conform to the standards exacted by L.R.S. 9:2082, which mandates that they shall administer the trust solely in the interest of the beneficiary. Nor could they exercise their right of discretion for the best interest of their beneficiary when in fact they were unaware that such a right was vested in them. It is obvious that the trustees did not render to the plaintiff the high degree of good faith and intense loyalty that a fiduciary owes to his beneficiary.
The corpus of the trust was used exclusively to purchase chattel mortgage paper arising out of the sale of mobile home trailers by the settlor. This type of high risk investment is authorized under the trust. The trustees all affirmed that payment to plaintiff would not jeopardize the interest of anyone else in the trust, so this was not a factor in reaching their decision to defer payment. In fact under Section VI, Paragraph 5, plaintiff had the right to insist that his proportionate share be transferred and placed in a “bank savings account,” and therefore the impact of this withdrawal on the trust funds is not a factor to be considered in evaluating the right to immediate payment.
As in Martinez, we conclude the trustees’ decision was an abuse of discretion because of their testimony as to their reasons for making it may be summarized as an inaccurate policy statement generality. There is nothing in the record to reflect the trustees weighed their decision by examining the financial picture of Richard Deichmann and sincerely considering whether his best interest would be served by honoring or denying the request.
We find no relevance whatsoever in the fact that Internal Revenue Service approved the original document and its subsequent amendments as qualifying under Section 401. While this is of the utmost importance to those who will reap tax benefits, it has nothing to do with plaintiff’s right to distribution. We point out that this approval does not extend to the administration of the profit sharing fund.
We conclude the proportionate share of plaintiff should be paid as he has requested.
We next consider whether defendant is entitled to deduct from this amount $1,527.97, representing commission previously paid to plaintiff on trailers that were subsequently repossessed. The trust instrument grants to the employer the status of a preferred creditor in collecting any employment-related debt incurred by an employee. The $1,527.97 charge-back is the return of an unearned commission due to repossession of trailers. Since the participant’s proportionate share is based upon his. salary, including commissions, it is proper to deduct unearned commissions.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that A. A. Harmon, Sr., trustee, and Alto Employees’ Trust pay to plaintiff, Richard E. Deichmann, his proportionate interest in the Alto Employees’ Trust after deducting therefrom the sum of $1,527.97, with legal interest from judicial demand until paid. Defendants are to pay all costs.
REVERSED AND RENDERED.

. 26 U.S.C. 401 et seq.

. Section VI. Distributions, Paragraph 1 provides in part:
“Each Participating Employee shall be entitled to distribution of (a) the amount of his separate Account within sixty (60) days after the end of the fiscal year in which his separation as an Employee occurs as a result of his retirement, death or incapacity, or (b) the amount of his distributive share of his separate Account as computed in Paragraph 2(e) of this section within sixty (60) days after the end of the fiscal year in which his separation as an Employee occurs as a result of his resignation or dismissal. * * * ”

. Section X. Miscellaneous, Paragraph 10 provides:
“This Agreement may be amended at any time and from time to time by an instrument in writing executed by the Corporation and the then Trustees, approved by a resolution adopted by the Board of Directors of the Corporation, but such power of amendment shall under no circumstances include the right in any way or to any extent to revest or otherwise transfer any interests in or to the Fund, or any income therefrom, to the Corporation ; nor shall the power of amendment include the right in any way or to any extent to divest any Participating Employee of his proportionate interest in the Fund. Neither shall such power of amendment be exercised in any way which would or could give to any Participating Employee any right or thing of exchangeable value in advance of the receipt of distributions in accordance with the terms provided therefor, and provided that no amendment shall ever operate to enable any part of the corpus or income or other assets of the Fund to be used for or diverted to any purpose other than the exclusive benefit of Participating Employees of the Corporation.”

.Section VI was deleted entirely. The part with which we are concerned was substituted as follows:
“3. Distributions shall be made by the Trustees, in their sole discretion, subject to the limitations set forth in this paragraph, and the trustees may direct that distribution to any Participant or his beneficiary shall be made in cash or in kind or in a combination of both and that such distribution shall be made in whole or in part:
(a) In a lump sum,
(b) In installments over a period of years, or
(c) In the form of an annuity contract providing for a monthly guaranteed life income for the life of the Participant, or for such other term or terms as shall be agreed upon between the Participant and the Trustees, or
(d) In such other form or manner as the Trustees may direct, after consultation with the Participant, or
(e) In any combination of the foregoing methods of distribution.
“Distribution in kind shall be based upon the fair market value of the distributable property, as determined by the Trustees at the time of distribution.
“4. The Trustees may, in cases other than disability or death, determine that any such distribution shall not be made or shall not commence until what would have been a Participant’s normal retirement date; provided, further that the Trustees shall retain the power and discretion at any time to change the method or date of commencement of distribution, except that such distribution or the commencement thereof shall not in any event, be deferred beyond what would have been a Participant’s normal retirement date.”

. In part the letter recited:
“To itemize all the reasons why I need my money at this time would indeed be quite voluminous. * * * Hs t¡;
“In the midst of this inflationary spiral, with four children, two headed for college next year, one towards medical school, I am looking at $10,000.00, in college expense next year and in excess of $20,000 per year for the next 8 years thereafter.”

. Fourteen of these payments varied in amounts from $38.46 to $1,000.40, and one payment of $2,800.

. The “normal retirement date” of participants under the trust agreement was reduced from 65 years to 60 years by an amendment dated March 31, 1965.

. Section VI. Distributions, Paragraph 4 states: “The Trustees may * * * determine that any such distribution shall not be made or shall not commence until what would have been a Participant’s normal retirement date; provided, further that the Trustees shall retain the power and discretion at any time to change the method or date of commencement of distribution * *
It is interesting to note, but of no significance in the disposition of the merits of this ease, that by an amendment to the trust dated July 28, 1974 Paragraph 4 is deleted in its entirety and the following substituted therefor:
“4. The Trustees shall in cases other than disability or death, retain distributions until what would have been a participant’s normal retirement date.”